UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

[Filed Electronically]

| | |
|---|---|
| **CHAROLETTE DIANA WINKLER,** **Administratrix of the Estate of BRANDON CLINT HACKER, deceased,** | ) ) ) ) |
| **PLAINTIFF** | ) ) |
| v. | ) ) |
| **MADISON COUNTY, KENTUCKY** Serve: Reagan Taylor, Judge Executive        Madison County Courthouse        101 West Main Street        Richmond, KY 40475 | ) ) ) ) ) ) ) |
| -and- | ) ) |
| **DOUG THOMAS, individually** Serve: Madison County Detention Center        107 West Irvine Street        Richmond, KY  40475 | ) ) ) ) ) |
| -and- | ) ) |
| **ADVANCED CORRECTIONAL HEALTHCARE, INC.** Serve: C. T. Corporation System        306 W. Main St., Suite 512        Frankfort, KY 40601 | ) ) ) ) ) ) |
| -and- | ) ) |
| **NADIR H. AL-SHAMI, MD, individually** Serve: 405 Mt. Holly Road        Fairdale KY 40118 | ) ) ) ) |
| -and- | ) ) |
| **LAYLA TROUTMAN, ARNP, individually** Serve: Madison County Detention Center        107 West Irvine Street        Richmond, KY  40475 | ) ) ) ) |

|  |  |
|---|---|
| -and- | ) |
|  | ) |
|  | ) |
| **ARLENE JOHNSON, LPN, individually** | ) |
| **Serve: Madison County Detention Center** | ) |
|     **107 West Irvine Street** | ) |
|     **Richmond, KY  40475** | ) |
|  | ) |
| -and- | ) |
|  | ) |
| **TOM JONES, individually** | ) |
| **Serve: Madison County Detention Center** | ) |
|     **107 West Irvine Street** | ) |
|     **Richmond, KY  40475** | ) |
|  | ) |
| -and- | ) |
|  | ) |
| **CAPT. CORY DUNNING, individually** | ) |
| **Serve: Madison County Detention Center** | ) |
|     **107 West Irvine Street** | ) |
|     **Richmond, KY  40475** | ) |
|  | ) |
| -and- | ) |
|  | ) |
| **J.J. LAGRANGE, individually** | ) |
| **Serve: Madison County Detention Center** | ) |
|     **107 West Irvine Street** | ) |
|     **Richmond, KY  40475** | ) |
|  | ) |
| -and- | ) |
|  | ) |
| **KEITH TRICKLER, individually** | ) |
| **Serve: Madison County Detention Center** | ) |
|     **107 West Irvine Street** | ) |
|     **Richmond, KY  40475** | ) |
|  | ) |
| -and- | ) |
|  | ) |
| **WHITNEY BRATCHER, individually** | ) |
| **Serve: Madison County Detention Center** | ) |
|     **107 West Irvine Street** | ) |
|     **Richmond, KY  40475** | ) |
|  | ) |
|         **DEFENDANTS.** | ) |

## COMPLAINT

COMES the Plaintiff, Charolette Dianna Winkler, Administratrix of the Estate of Brandon Clint Hacker and states as follows:

### I. Introduction

1. Charolette Diana Winkler, Mother and Administratrix of the Estate of Brandon Clint Hacker ("Mr. Hacker"), complains of the egregious and unjustifiable treatment of Mr. Hacker by Defendants named in the caption above. As more specifically set forth below, Mr. Hacker, after his incarceration at the Madison County Detention Center ("the Jail"), was subjected to Defendants' deliberate indifference to his obviously serious medical needs and, as a consequence, died. It is the purpose of this action to recover the actual damages Mr. Hacker and his estate have sustained as a result of Defendants' conduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

### II. Jurisdiction and Venue

2. Plaintiff seek damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed Mr. Hacker by the Eighth, Tenth and Fourteenth Amendments to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§1331 and 1343. Plaintiff also seeks damages in excess of $75,000 for negligence, gross negligence, outrageous conduct, intentional infliction of emotional distress, wrongful death and violations of applicable Kentucky regulations. Madison County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

**III. Parties**

3. Plaintiff Charolette Diana Winkler was appointed Administratrix of Mr. Hacker's estate by order of the Madison District Court on August 20, 2014. (A copy of which is attached hereto as **Exhibit "A"**.)

4. Defendant Madison County, Kentucky at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers, employees and independent contractors at the Jail.

5. Defendant Doug Thomas was at all times mentioned herein acting individually and/or in his official capacity as Jailer of Madison County, and as such established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers, employees and independent contractors at the Jail, including but not limited to all the other individual Defendants named in this action.

6. Defendants Tom Jones, Captain Cory Dunning, J.J. LaGrange, Keith Trickler and Whitney Bratcher were at all times mentioned herein officers and employees of the Jail, and personally participated in the mistreatment of Plaintiff as described below.

7. Defendant Advanced Correctional Healthcare, Inc. ("ACH") at all times mentioned herein employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the health care professionals of the Jail, including Nadir H. Al-Shami, MD, Layla Troutman, ARNP, and Arlene Johnson, LPN.

8. Defendants Nadir H. Al-Shami, MD, Layla Troutman, ARNP, and Arlene Johnson, LPN, were at all times mentioned herein medical professionals employed or separately

contracted by ACH to work at the Jail, and personally participated in the mistreatment of Plaintiff as described below. Defendant Al-Shami, as the Jail's doctor, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, Nurses Troutman and Johnson.  Likewise, as an ARNP, Defendant Troutman was  responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, LPN Johnson.

## IV.  Nature of Defendants' Conduct

9.      Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky.  The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below.  The offenses described below resulted from the failure of the supervisory individuals and entities identified above to employ qualified persons for positions of authority at the Jail, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom and practice to protect the constitutional rights of Mr. Hacker.  Defendants' conduct was intentional and grossly negligent, constituting actual malice toward Mr. Hacker and constituting a total, deliberate and reckless disregard for and indifference to Mr. Hacker's life and his constitutional and common law rights, and, therefore, justifies an award of punitive damages in addition to the actual damages his estate is entitled to recover.

## V. Facts

10. Mr. Hacker, a 35-year old resident of Richmond, Kentucky, was admitted to the Jail on April 30, 2014 after his arrest on two outstanding warrants for failing to appear at child support hearings.

11. On Friday, May 2, 2014, Mr. Hacker filled out a sick call request form stating: "Very sick, stomach, meds." A medical progress note prepared later that day indicates that Mr. Hacker was seen by LPN Johnson, that he complained of "being sick, shaky, chills, upset stomach." LPN Johnson's objective examination of Mr. Hacker revealed a high blood pressure reading of 150/90, and "active tremors, body aches, sweating." Under "MD Assessment," she wrote "Possible W/D [withdrawal] from heroin." Despite the fact that sudden withdrawal from heroin can be fatal, the rest of the note appears to indicate that Mr. Hacker was merely prescribed Clonidine, Vistaril and Bentyl per "T.O. Layla Troutman NP."

12. May 3 and 4, 2014, were a Saturday and a Sunday. On information and belief, Plaintiff alleges that there is no medical staff at the Jail on weekends, and that there was none at the Jail the weekend of May 3 and 4, 2014.

13. On Sunday, May 4, 2014, at an unknown time, Mr. Hacker filled out another sick call request form stating: "Blood Pressure. Need to see A.S.A.P. Having trouble breathing. Stomach problems." An incident report prepared by Defendant J.J. LaGrange, said:

> ON 5-4-2014 I DEPUTY LAGRANGE WAS ORDERED BY CAPTAIN JONES TO CONTACT DR. AL-SHAMI IN REF[ERENCE] TO INMATE HACKER FEELING SICK TO HIS STOMACH, INMATE HACKER ADVISED THAT HE COULD NOT KEEP ANYTHING DOWN, HE ALSO STATED THAT HE WAS GONNA (SIC) BE DOPE SICK, DR. AL-SHAMI ADVISED ME TO GIVE HIM VISTIEL (SIC), AND BENTNOL FOR HIS DOPE SICKNESS AND PHENAGRAN (SIC) FOR HIS STOMACH SICKNESS, ALL THREE MEDS WHERE (SIC) ADMINISTERED TO HIM, HIS BLOOD PRESSURE WAS

>   110/70 BEFORE MEDS WHERE (SIC) ADMINISTERED SO KONOLAPAN (SIC) WAS GIVEN.

In a subsequent addendum to his incident report, Defendant LaGrange that no "KONOLOPAN" was administered to Mr. Hacker.

   14.   Another May 4 incident report, this one prepared by Defendant Tom Jones sometime on May 4 stated:

>   INMATE HACKER ADVISED ME THAT HIS STOMACH HURT AND THAT HE THOUGHT THAT HE WAS BLEEDING INTERNALLY DUE TO THE PAIN.  I CALLED DR. AL-SHAMI AND ADVISED HIM OF THE SITUATION.  HE ADVISED ME THAT INTERNAL BLEEDING WOULD NOT CAUSE PAIN.  HER FURTHER ADVISED TO MONITOR HIM.  I ADVISED CAPTAIN DUNNING AT SHIFT CHANGE OF INMATE HACKER AND SEVERAL OTHER MEDICAL COMPLAINTS THAT HAD OCCURRED THROUGH THE SHIFT.

   15.   In another incident report, Defendant Keith Trickler described an encounter with Mr. Hacker in the early morning hours of Monday, May 5:

>   ON THE DATE OF 5-5-14 AND (SIC) OR ABOUT THE TIME OF 0300 [3 am] TO 0320 [3:20 am]. I CPT KEITH TRICKLER WAS PASSING OUT LOWER LEVEL MEDS. WHEN I CPT TRICKLER GOT TO CELL 023 I CPT TRICKLER NOTICED INMATE BRANDON HACKER SITTING AT THE TABLE.  I ASKED INMATE HACKER WHAT WAS WRONG, INMATE HACKER STATED TO ME THAT HE WAS REALLY GOING THROUGH IT. INMATE HACKER STATED THAT HE WAS DOPE SICK.  I CPT TRICKLER GAVE INMATE HACKER HIS MEDS AND WENT TO THE NEXT CELL FOR MEDS.

About two hours later, according to an incident report prepared by Defendant Whitney Bratcher:

>   ON 5/5/2014 AT THE TIME OF 05:30 A.M. I (DEP. W. BRATCHER) SERVING LOWER LEVEL FOOD SERVICE.  WHEN I GOT TO CELL 023, I CALLED EVERYONE BY ALPHABETICAL ORDER TO COME UP AND GET THEIR FOOD.  WHEN GOT TO INMATE HACKER'S NAME, CELL 023 POINTED WHERE INMATE HACKER WAS LAYNG AT, AND ASKED IF THEY COULD GET HIS FOOD.

Sometime thereafter, Deputy Jailer Matt Dees reported:

> Walked by cell inmate pecked on glass I entered cell and inmate hacker (sic) was sitting in chair.  Inmate hager (sic) stated he was having withdraws (sic) from heroin and felt very sick.  left (sic) cell and Captain Tom Jones told me to take him to medical.  I helped inmate hacker (sic) put on t-shirt and walked him to medical.

16.  A progress note of LPN Johnson describes what happened next:

> 5/5/15 (sic) 9:25 am  I/M [inmate] brought up to Med Room.  D/T [detoxing?] C/O [complaining of] being sick.  I/M pale sweaty.  States he was trying to get through withdrawals on his own.  Very [illegible].  Reaching out grabbing this writer.  Inquiring from inmate what type of drugs he has ingested.  I/M states heroin.  Track marks notice to arms.  States he's unable to keep any food down.  120/78.  Call to MD.  Order received.  Inmate took Vistaril 25 mg Bentyl 20 mg.  Attempted to give inmate gatorade to drink.  Several sips taken.  Spilled some in the floor and clothing.  Stated he hasn't had a bowel movement in a while.  120/78.  Hands cold skin moist.  While this writer was encouraging inmate to drink more of the gatorade I/M layed back on bed eyes rolled to back of head.

Mr. Hacker could not be revived and was rushed to the Emergency Room at Baptist Hospital in Richmond.  He arrived there unresponsive at 10:15 am, and was pronounced dead at 10:47 am.  The coroner attributed Mr. Hacker's death to acute peritonitis due to peptic ulcer disease with perforation of duodenal ulcers.

17.  On information and belief, Plaintiff alleges that throughout the weekend of May 3-4, 2014, Mr. Hacker and his cellmates repeatedly requested that he be seen by a doctor or taken to a hospital, to no avail.  On information and belief, Plaintiff alleges that the Medical Defendants – Dr. Al-Shami, ARNP Troutman, and LPN Johnson, violated numerous written policies and procedures of Defendant ACH, including but not limited to those concerning monitoring of inmates believed to be experiencing withdrawal and/or stomach/abdominal pain.  On information and belief, Plaintiff alleges that Defendants Jones, Dunning, LaGrange, Trickler and Bratcher violated numerous written policies and procedure of the Jail in their handling of Mr. Hacker and his complaints.

18. At no time after Mr. Hacker's admission to the Jail on April 30 was he examined by any medical professional other than LPN Johnson, who cannot diagnose or treat illnesses. He was not examined by Dr. Al-Shami or ARNP Troutman, and no differential diagnosis of his symptoms was ever made. Dr. Al-Shami is located in Fairdale, Kentucky, over 100 miles from the Jail.

### VI. Causes of Action

### Count 1

19. Paragraphs 1-18 above are incorporated herein by reference.

20. Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and constituted total, deliberate and reckless disregard of and indifference to Mr. Hacker's life as well as his rights and the risk of harm to his life occasioned by such conduct.

21. Plaintiffs believe and, after reasonable discovery, will show that Mr. Hacker's treatment by Defendants was not unusual, but was part of a continuing policy, pattern, custom and/or practice of Defendants of willfully and deliberately ignoring the medical needs of inmates of the Jail. Such conduct is the result of policies, patterns, customs and/or practices of Defendants, either written or unwritten, which are systematically applied to all persons who exhibit the symptoms of obviously serious medical conditions while incarcerated at the Jail. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Mr. Hacker, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

22. As a result of the foregoing, Mr. Hacker, through Defendants' deliberate indifference and grossly negligent and/or reckless, intentional and/or malicious conduct, was

subjected to cruel and unusual punishment and ultimately deprived of his life without due process of law in violation of the Eighth, Tenth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### Count 2

23. Paragraphs 1-22 above are incorporated herein by reference.

24. By virtue of the foregoing, all Defendants were negligent and grossly negligent in their treatment of Mr. Hacker; in addition, the medical professionals responsible for Mr. Hacker's care – Defendants Al-Shami, Troutman and Johnson – failed to meet the standard of care applicable to their professions.

### Count 3

25. Paragraphs 1-24 above are incorporated herein by reference.

26. Defendants' treatment of Mr. Hacker was so beyond the bounds of human decency that it constitutes the tort of outrage.

### Count 4

27. Paragraphs 1-26 above are incorporated herein by reference.

28. Mr. Hacker suffered a wrongful death under KRS 411.130, for which his estate is entitled to recover damages pursuant to KRS 411.135.

### Count 5

29. Paragraphs 1-28 above are incorporated herein by reference.

30. Defendants in their treatment of Mr. Hacker violated 501 KAR 3:090(21).

### VII. Damages

31. Paragraphs 1-30 above are incorporated herein by reference.

32. Mr. Hacker's death was caused by the actions and inactions of the defendants, as stated herein above, and his estate is therefore entitled to recover the loss of his ability to earn money over his reasonable life expectancy for which his estate is entitled to recover damages in excess of $75,000. Mr. Hacker also experienced severe mental and physical pain and suffering as a result of Defendants' conduct, for which his estate is entitled to recover damages in excess of $75,000. Finally, Defendants' violations of Mr. Hacker's constitutional and common law rights were cruel, malicious, and evinced a total and reckless disregard for his life and those rights, entitling Plaintiff to recover punitive damages, in excess of $75,000, from Defendants in order to deter such conduct in the future.

**WHEREFORE**, Plaintiff, Charolette Diana Winkler, demands:

1. Trial by jury;
2. Actual damages for (i) Estates loss of his ability to earn money over his reasonable life expectancy, (ii) Mr. Hacker's mental and physical pain and suffering, and (iii) the expenses incurred in the funeral and burial of Mr. Hacker, all in excess of $75,000
3. Punitive damages in excess of $75,000;
4. Her costs herein expended;
5. Attorneys' fees pursuant to 42 U.S.C. §1988;
6. Pre- and post-judgment interest on all sums awarded; and
7. All other relief to which she, Mr. Hacker, and his estate are entitled under law or in equity.

Respectfully submitted,


/s/ William R. Garmer
WILLIAM R. GARMER

William R. Garmer
bgarmer@garmerprather.com
Jerome P. Prather
jprather@garmerprather.com
Garmer & Prather, PLLC
141 North Broadway
Lexington, KY  40507
859/254-9351

Gregory A. Belzley
gbelzley@aol.com
Camille A. Bathurst
camillebathurst@aol.com
BelzleyBathurst Attorneys
P.O. Box 278
Prospect, KY  40059
502/228-5084


*Counsel for Plaintiff*